423 So.2d 1205 (1982)
Moses COLEMAN
v.
DOUGLAS PUBLIC SERVICE, INC., Willie Dixon, the Louisiana Coca-Cola Bottling Company, Ltd. and Liberty Mutual Insurance Company.
No. 13189.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
Rehearing Denied January 14, 1983.
*1206 Reuter & Reuter, Arthur C. Reuter, Jr., New Orleans, for The Louisiana Coca-Cola Bottling Co., Ltd., defendants-appellants.
Bendana & Carlton, Orlando G. Bendana, Wayne H. Carlton, Jr., New Orleans, for Moses Coleman, plaintiff-appellee.
Before GARRISON, AUGUSTINE and CIACCIO, JJ.
CIACCIO, Judge.
This is an action for damages arising out of an automobile accident which occurred on January 17, 1979, near the intersection of St. Joseph and Carondelet Streets, in the City of New Orleans. After a trial on the merits, the district court rendered judgment in favor of the plaintiff, Moses Coleman, and against the defendants, Douglas Public Service, Inc., Louisiana Coca-Cola Bottling Company and Liberty Mutual Insurance Company, in solido, for the sum of $56,543.00 plus legal interest. The Louisiana Coca-Cola Bottling Co., Douglas Public Service, Inc.[1] and Douglas' insurer, Liberty Mutual Insurance Co. appeal from this judgment. We affirm the judgment of the district court.
The issues raised on appeal are: (1) Did the trial court err in finding that the defendant, Coca-Cola Bottling Company, was negligent and that the negligence of Douglas Public Service, Inc. was not an intervening cause of the accident? (2) Was the trial court's award of damages excessive? and (3) Did the trial court err in failing to rule upon the defendant's third party demand?
The facts are as follows: At the time of this incident, the plaintiff was attempting to back his automobile onto St. Joseph Street from the parking lot located at the corner of St. Joseph and Carondelet Streets. The plaintiff observed the Douglas truck stopped at the traffic light on the corner of St. Joseph and Carondelet Streets. The plaintiff moved his vehicle forward, away from the street and inward toward the parking lot because he realized that the Douglas truck was going to turn into the wrong lane of traffic, adjacent to where his vehicle was positioned, and could not pass his automobile if it were in the roadway. At the time of the incident, a truck owned by Coca-Cola was parked in the right passage lane on St. Joseph Street, near the corner of Carondelet Street. St. Joseph Street is a two lane roadway with traffic moving in opposite directions. The Douglas truck proceeded around the corner and into the wrong lane of traffic on St. Joseph Street, due to the obstruction presented by the parked Coca-Cola truck. The driver of the Douglas vehicle was observing, through his rear view mirrors, the curb, light standard and fire plug which are located on the corner of this intersection. The driver of the Douglas vehicle had nearly completed the turn with his forty (40) foot tractor-trailer rig when the rear wheels of his trailer came into contact with the left rear fender and bumper of the plaintiff's vehicle.
As a result of this accident, the plaintiff sustained a bruise of the left hop and pain in the neck, shoulders and back. Shortly after the accident, he was seen by his treating orthopedist, Dr. Stuart Phillips. The plaintiff was examined and diagnosed as having a cervical sprain and an aggravation of a pre-existing degenerative arthritic condition of the lumbar spine. The plaintiff was seen sixteen (16) times by Dr. Phillips commencing with the date of the accident.
On March 12, 1979, Dr. Phillips examined the plaintiff and observed that he was experiencing spasms and limited motion in the back, but that his neck had improved.
*1207 On April 9, 1979, the plaintiff's condition was worse. There were bilateral problems in the legs with a generalized weakness in this area which suggested an injury to the nerves leading to the legs. Dr. Phillips posited that the plaintiff had spinal stenosis, which is a condition wherein the nerves of the back are encroached upon by an overgrowth of tissue from arthritis and an overgrowth of bone from the aging process. Dr. Phillips continued to treat the plaintiff with pain relievers and anti-inflamatory drugs and hospitalization was suggested. The plaintiff was required to wear a corset to prevent irritation of the affected area.
An electromyogram was administered on May 8, 1979 and it revealed a nerve lesion of the fifth lumbar and the first sacral nerve root.
At the time of trial, surgery was being arranged for the plaintiff. The surgery would involve the removal of all bone and swollen tissue around the joints from the last two or three levels of the spine. The object of the operation is to allow the spinal fluids to flow freely through the spinal column. In this patient, the area from "L3 to the sacrum" were affected. The surgery, which is four or five times more involved than the surgery for a ruptured disc, requires a three week stay in the hospital, at a cost of approximately $5,600. The surgery involves the risk of possible death, paralysis, and a non-success rate of ten to twenty percent. After the operation, the plaintiff would be required to undergo physical therapy. He would have to wear a corset for the rest of his life and would experience pain for the rest of his life. He would also have some weakness in his legs after the operation. Following surgery, the plaintiff would be able to sit longer and walk from two or three blocks to a mile. He would be able to engage in clerical work, although he could not work as a longshoreman again, nor engage in light manual labor. It was Dr. Phillip's expert opinion that "... the January accident probably aggravated the arthritis and hurried the onset of the spinal stenosis." (TR. 23).

Negligence
The trial court made the following findings concerning the issue of negligence:
"To hold the plaintiff negligent in this case, even contributorily negligent, the court would have to assume that the plaintiff, who realized danger, pulled his vehicle back into a safety zone and then, as the van passed, deliberately backed out into the moving van as it passed to its rear. I cannot make such an assumption. I conclude, from a preponderance of the evidence, that the moving van's driver, trying to act prudently, was engrossed in looking through his rear view to be sure he cleared the objects on the sidewalk at the intersection, with the rear of his rig. And, since the cab and front portion of the trailer cleared the plaintiff automobile, he mistakenly assumed his rear would do likewise. He was therefore negligent. I further conclude that the Coca-Cola truck was illegally parked in the moving lane of traffic, unloading its cargo and blocking traffic. It too was therefore negligently parked. This accident was caused by the combined negligence of the Coca Cola truck driver and the Mayflower van's driver. (If this accident had happened after the comparative negligence law went into effect, I would hold the Coca Cola truck 75% negligent and the Mayflower van 25%.)"
The defendant, Louisiana Coca-Cola Bottling Company, argues that it did not breach a duty owed to the plaintiff, nor create an unreasonable risk, and that the presence of its double parked vehicle was not a proximate cause of the accident. They urge that the actions of the defendant, Douglas Public Service, Inc., were the proximate cause, or, at least, an intervening cause of the accident.
Violation of a statute is negligence per se and if this negligence is the legal cause of the accident, it is actionable. Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (La.,1971); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La.,1962). In order to determine "legal cause," one must *1208 ascertain: (1) whether the defendant's conduct is a cause-in-fact of the accident, and (2) whether the risk of the particular injury which the plaintiff suffered was within the scope of the protection of that duty which the defendant has breached. Pierre v. Allstate Insurance Co., supra; Dixie Drive It Yourself System v. American Beverage Co., supra; Becnel v. St. John Police Jury, 364 So.2d 1074 (La.App., 4th Cir.,1978). Therefore, the analysis rests upon a cause in fact/duty risk approach. A cause-in-fact exists if the negligent conduct is a substantial factor in bringing about the resultant harm. Dixie Drive It Yourself System v. American Beverage Co., supra; Becnel v. St. John Baptist Parish Police Jury, supra; State Farm Mutual Insurance Co., v. South Central Bell Telephone Co., 343 So.2d 758 (La.App., 3rd Cir.,1977). That is, a cause-in-fact is a necessary antecedent without which the accident would not have occurred. Dixie Drive It Yourself System v. American Beverage Co., supra, Becnel v. St. John Baptist Parish Police Jury, supra; State Farm Mutual Insurance Co. v. South Central Bell Telephone Co., supra.
In addition to R.S. 32:141, the Motor Vehicle and Traffic provisions of the Municipal Code for the City of New Orleans, Section 38-240 provides:
No person shall stop, stand or park any vehicle upon a street in such a manner or under such conditions as to leave available less than ten feet (10') of the width of the roadway for free movement of vehicular traffic (M.C.S. Ord. No. 3816 § 1, 6-6-68)"
The evidence reveals, and the trial court correctly found, that the Coca-Cola truck was illegally parked in the moving lane of traffic, unloading its cargo and blocking traffic.
The mentioned state statute and municipal ordinance were designed as safety measures. They were intended to insure that there would exist unhampered roadways which were available for the free flow of traffic. Thus they were intended as a prevention against congestion and accidents. The defendant, Coca-Cola, violated the provisions of this ordinance and this violation is negligence per se.
Moreover, the illegally parked Coca-Cola truck was a cause-in-fact of the accident, as it was a substantial factor in bringing about the accident and was a necessary antecedent. The accident would not have occurred if the Coca-Cola truck was not illegally parked, as the Douglas truck would not have been forced into the wrong lane of traffic, thus bringing it into contact with the plaintiff's vehicle.
Furthermore, we find that the risk and harm which the plaintiff encountered, namely, the accident resulting from the congestion and obstruction of a moving traffic lane falls clearly within the scope of protection which the statutes were intended to create. Therefore, we conclude, as did the trial court, that the accident was caused by the combined negligence of the Coca Cola truck driver and the Douglas van driver. Stated another way, the negligence of Douglas Public Service was not an intervening and superceeding cause of the accident, which would relieve Coca-Cola of liability. The trial court did not err on its findings on the issue of negligence.

Damages
The trial court awarded the plaintiff, Moses Coleman, the sum of $56,543.00, consisting of $50,000 for pain, suffering and permanent disability.
The defendant contends that this amount is excessive, because the plaintiff had a pre-existing condition and permanent disability before this accident.
In assessing damages in cases of quasi-offense, much discretion is left to the trial court judge. Perniciaro v. Brinch, 384 So.2d 392 (La.,1980). Before the appellate court will disturb such an award, the record must clearly reveal that the trier of fact abused his discretion in making the award, based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Rick v. Stevens, 373 So.2d 498 (La.,1979).
*1209 The record reveals that the plaintiff was involved in an accident which affected his back, on April 30, 1976, while working for Atlantic & Gulf Stevedore. He was treated by Dr. Romano, Dr. George Cary and Dr. Stuart Phillips. He had been given permission to return to work by Dr. Cary. His former employer was attempting to have him return to light duty as a water boy, watchman or cook when he became involved in the present accident and therefore, was prevented from returning to work.
It was Dr. Phillips' opinion that the plaintiff's condition was getting better, or was at least stable, in 1978. Since January, 1979, after the plaintiff was involved in this accident, his condition was found to have worsened. It was Dr. Phillips' opinion that this accident aggravated the plaintiff's degenerative arthritic spinal condition and hurried the onset of spinal stenosis.
It is arguable as to whether the plaintiff was permanently disabled prior to this accident, however, there is ample evidence to convince us that the plaintiff was totally and permanently disabled after this accident. Moreover, we are satisfied that the plaintiff's prior condition was aggravated by this accident.
The plaintiff has a ninth grade education. As a result of this accident he has suffered pain and will continue to have some pain for the rest of his life. His degenerative spinal condition has been aggravated by the accident. He suffers from spinal stenosis, which he did not experience before the accident. The plaintiff has undergone extensive medical treatment since the accident and he is severely restricted in his activities. He has been required to wear a corset and take pain relieving medication. He will have to undergo complex and risky spinal surgery. At best, after surgery and physical therapy, he may be able to return to some clerical type position.
Considering the plaintiff's injuries and the effect they will have upon him, we do not feel that the trial court abused its discretion in awarding general damages of $50,000. The plaintiff is entitled to be compensated for the aggravation of his pre-existing condition, the onset of spinal stenosis precipitated by the accident, the pain and suffering and the permanent disability which this accident caused. The award of damages is not excessive.

Third Party Demand
Defendant, Louisiana Coca-Cola Bottling Co., argues that the trial court erred in failing to rule on the third party demand which it made against the defendants, Douglas Public Service, Inc., its insurer and its driver. The third party demand seeks indemnity and/or contribution.
When actionable negligence of two tort-feasors contributes in causing harm to a third party, each tort feasor is responsible for the damage and they are solidarily liable. Dixie Drive It Yourself System v. American Beverage Co., supra.
Under the statute governing solidary obligors, which was in effect at the time of this accident, each debtor in solido was liable for its virile portion of the obligation. C.C.Art. 2103.
The trial court judgment held the defendants, Douglas Public Service, Inc., its insurer, and Louisiana Coca-Cola Bottling Co. liable in solido for the sum of $56,543.00 plus interest. The trial court judgment implicitly denied the defendants' third party demand for indemnity and gave effect to the claim for contribution.[2] The trial court did not err in this regard.
For the reasons assigned, the judgment of the trial court is affirmed. Costs are assessed against the defendants-appellants.
AFFIRMED.
NOTES
[1] Although Douglas Public Service, Inc. and their insurer appeal this matter, no briefs are filed on their behalf.
[2] On oral argument, plaintiff acknowledged receipt of one-half the judgment amount from the defendant, Douglas Public Service, Inc.