LABORDE, Judge.
In this case, plaintiff-appellant, John W. Angers, Jr., appeals the trial court’s holding that defendant-appellee, Dean Etie, was not at fault in causing the automobile accident that injured plaintiff. Finding no error by the trial court, we affirm.
FACTS
Defendant, Dean Etie (Etie) as a volunteer member of the Loreauville Volunteer Fire Department, was issued a beeper to inform him of fires and turn out gear consisting of a coat, helmet, boots and gloves. At his own expense, he equipped his pickup truck with emergency lights to use when responding to a fire. On the right-hand side of his front windshield he mounted a red flashing federal emergency signal with mirrors reflecting out towards the front of the truck. He installed in the back of the truck a large elevated signal light with four revolving spotlight type bulbs that could be seen from the rear as well as the front of the vehicle. The volunteer firemen of Loreauville Volunteer Fire Department individually decided whether to respond to fires, and there was no way to communicate with the responding volunteers until they reached the station house or the emergency scene.
On July 31, 1988, around 8:25 p.m., Etie’s beeper went off, and he was informed of a fire on Daspit Road in Iberia Parish outside the city limits of Loreauville. At the time the beeper went off, Etie was at the Lake Dauterive Road Boat Landing. Etie had spent the majority of the day at the boat landing. He had two alcoholic drinks, left to eat something, and then had two more alcoholic drinks.
Etie decided to respond to the call and entered his truck. He engaged his emergency lights before turning on the road to leave the Lake Dauterive Road landing. The two sets of red emergency flashers were on and he had his headlights blinking from bright to dim. Etie proceeded down Lake Dauterive Road and became aware of a vehicle in front of him traveling in the same westerly direction. The other vehicle was operated by John W. Angers, Jr. (Angers), who also had previously been at the boat landing. Angers had consumed one alcoholic beverage.
Both Lake Dauterive Road (La. Highway 3242) and Gondron Road are two lane roads. Motorists approaching the intersection from Gondron Road are faced with a stop sign. *349 There are no traffic signals controlling the flow of traffic on Lake Dauterive Road. The speed limit on the road was fifty-five miles per hour and Etie was traveling sixty-five miles per hour.
As Etie approached the vehicle in front of him, the vehicle began to slow. Etie presumed the vehicle was slowing to allow him safe passage as he was an emergency vehicle. Etie eased into the left oncoming traffic lane to pass at a reasonable distance behind the vehicle. The road was dark with no lights illuminating the area allowing one to see the approaching intersection. As the front of Etie’s vehicle got about even with the back bumper of the preceding vehicle, the vehicle began turning left onto Gondron Road. The preceding vehicle did not signal its intent to turn until immediately before it began to make the turn. The two vehicles collided near the intersection of Lake Dauterive Road and Gondron Road. Both drivers sustained serious injuries.
At the time of the accident, there were no traffic signals controlling the flow of traffic on Lake Dauterive Road at the intersection and no “no passing lines” on the road in the vicinity of the intersection.
Mr. Angers testified that he saw the headlights of a car behind him when he was about a quarter of a mile from the intersection at Gondron Road. He admitted that he knew the vehicle behind him was a police or emergency vehicle of some type. The investigating officer issued Etie a ticket for excessive speed and administered Etie a field' sobriety test which he passed.
Angers filed suit against Etie, Champion Insurance Company, Loreauville Fire Department, and the City of Loreauville to recover for his injuries which included a lower back injury. On August 14, 1992, the trial court applied a duty-risk analysis and determined that Angers was one hundred percent at fault in causing the accident and Etie was free from fault. Angers appeals.
ASSIGNMENT OF ERROR NUMBER ONE
Angers asserts the trial court erred in ruling that the sole cause of the accident at issue was Angers’ own negligence; instead, Angers alleges the sole cause of the accident was Etie’s negligence. He points out that Etie had been drinking at the time of the accident and that the investigating officer cited Etie for driving sixty-five in a fifty-five mile per hour speed zone. Plaintiff-appellant further states that Etie was negligent for attempting to pass him so near an upcoming intersection. Mr. Errol Verret testified that he had seen a possibly intoxicated Etie at the boat landing and that he told Etie not to drive. Mr. Verret is a friend of Angers and testified that Angers is his boss. On cross examination, Mr. Verret admitted he had not seen Etie consume any alcohol.
Angers states Kaplan v. Lloyds Insurance Company, 479 So.2d 961 (La.App. 3d Cir. 1985) is controlling in the instant case. In Kaplan, supra, a left-turning motorist was struck by a police patrol car who was proceeding under flashing lights to the scene of a robbery. The court assessed 40% fault to the motorist and 60% to the deputy. The court found the deputy exceeded the posted forty mile per hour speed limit by thirty-five miles per hour, or fifteen miles in excess of the twenty mile speed limit violation allowed by the sheriff department policy. On the basis of these facts, the court found the deputy breached his duty to drive with due regard for the safety of others and that this breach was in part the cause of the injury suffered by the turning motorist,
Kaplan, supra, is distinguishable from the instant case because Etie only exceeded the speed limit by ten miles per hour. LSA R.S. 32:24 provides:
LSA — R.S. 32:24 — Emergency Vehicles; Exceptions.
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
* * * * ⅜ *
*350 (3) Exceed the maximum speed limit so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, ...
Etie was making use of visual signals in a manner sufficient to warn motorists because he had his lights flashing as well as two red flashing emergency lights. Etie fits within the provisions of the statute because he did exceed the speed limit, by ten miles per hour, and he had his visual signals alerting motorists. Kaplan, supra, thus is inapplicable in the instant case.
It is not in dispute that Etie had been drinking earlier the day of the accident. He candidly admits he had two drinks of Crown Royal and Seven Up before eating that afternoon and two more drinks when he returned to the boat landing. The investigating officer gave' Etie a field sobriety test which he passed. He did not cite Etie for D.W.I. Mr. Verret’s testimony was biased as he was a friend of Angers and Angers was his boss. The mere showing that a motorist had imbibed alcohol prior to involvement in an automobile accident does not per se establish negligence contributing to the accident. Henry v. Belgard, 368 So.2d 472 (La.App. 3d Cir.), writ denied, 371 So.2d 619 (La.1979). The trial court found the alcohol consumption by Etie was not a legal cause of the accident.
We do not find this to be manifestly erroneous. In Puearry v. Dept. of Pub. Safety, 496 So.2d 1372 (La.App. 3d. Cir.1986), we held that the driver of an emergency vehicle will only be held liable for negligence to the degree that it constitutes reckless disregard for the safety of others. Mr. Etie had his flashing lights on and the emergency flashers of his vehicle and blinked his headlights from bright to dim. Etie testified he saw Angers slowing down in front of him and thought he would pull over and felt it was safe to pass Angers.
A motorist who is making a left turn has a duty to make sure it is safe for him to do so. He also must turn his signal on at least one hundred feet prior to turning. LSA R.S. 32:104 provides:
LSA — R.S. 32:104 — Turning Movements and Required Signals.
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position from the roadway as required in R.S. 32:101, or turn the vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon the roadway unless and until such movement can be made with reasonable safety.
B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is an opportunity to give such signal.
Mr. Angers testified he turned his signal on as he began to turn. He breached his duty to turn his signal on one hundred feet prior to turning.
Motorists also have a duty to drive to the right hand side of the road and stop until an emergency vehicle has passed. La.R.S. 32:125 provides:
LSA — R.S. 32:125 — Procedure on approach of an authorized emergency vehicle.
A. Upon the immediate approach of an authorized vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emer *351 gency vehicle has passed, except when otherwise directed by a police officer.
Angers testified that he saw a vehicle behind him with flashing lights. Instead of pulling to the right shoulder, Angers turned left in front of the passing vehicle. In Hammer v. Combre, 503 So.2d 624 (La.App. 4th Cir. 1987), the court held that the duty of a left-turning motorist is to give a proper signal and to make proper observation that the turn can be made without endangering an oncoming or overtaking vehicle.
Angers breached both of the aforementioned duties. We find the trial court was not manifestly erroneous in finding Angers was solely at fault in causing this accident. Rosell v. Esco, 549 So.2d 840 (La.1989).
ASSIGNMENT OF ERROR NUMBER TWO AND THREE
Angers also states the village of Loreau-ville is vicariously liable for Etie’s negligence. We have found Etie was not negligent in this accident; thus, Loreauville cannot be vicariously liable. This third assignment of error lacks merit.
Angers also requests damages in the amount of $75,000.00. Because we have found no negligence on the part of Etie, this assignment of error also lacks merit.
ASSIGNMENT OF ERROR NUMBER FOUR
Angers maintains that Loreauville contributed to the accident due to the lack of training and instruction of its fire fighters. Specifically, he alleges Loreauville failed to properly instruct Etie to refrain from responding to a fire alarm after he had been drinking. Etie testified he knew there was a rule that he should not respond to a fire if he was intoxicated, but he did not know of any rule that he could not respond to a fire after consuming a few drinks. After a careful review of the record, we find Angers never proved that such an instruction was not given. Furthermore, Angers did not question the chief of the Loreauville Volunteer Fire Department whether such rules existed. These allegations are unsupported by any probative evidence. Therefore, we find this assignment of error lacks merit.
DECREE
For the reasons assigned above, the judgment appealed is affirmed. Costs of this appeal are assessed against plaintiff-appellant, John Williams Angers, Jr.
AFFIRMED.